# WASSON ET AL. *vs.* ENGLISH ET AL.

1. If a trustee purchases trust property by him sold at public auction, in accordance with the trust, and immediately sells it to another, for an advance price, pursuant to an arrangement previously made with such other person that he should not bid at the sale, and in consequence of which the trustee purchased the property for less than its value, a court of equity will compel the trustee to account to the *cestui que trust* for the advance upon his purchase.

### APPEAL FROM PETTIS CIRCUIT COURT.

STUART & MILLER, for appellants.

1. There was no *express* trust created in Ramsey & Wasson, by their purchase at the sheriff's sale, in April 1847, and the agreement entered into immediately preceding that sale.

2. The court could not properly imply a trust in them, from any misconduct on their part in purchasing the property, at the sale on the 1st Monday in August 1847, or prior to that sale.

3. Even if they were trustees by express agreement, or by implication, the decree of the court is erroneous. If they were trustees by express contract, we say that they did not speculate upon the trust fund, whilst they were acting in the capacity of trustees. If trustees by implication, then the decree should have been rendered setting aside the sale.

ENGLISH, for appellees.

1. The defendants are responsible as trustees; and herein of the statute of frauds, as applicable to the case.

1st, Because they admit the agreement in full in their answer, and do not set up the statute of frauds as a defence. To have availed themselves of the statute of frauds, they should have insisted upon it as a defence. 2nd Story's Eq. secs. 755 to 757; Wildbauger vs. Robideaux, 11 Mo. Rep. 659; 1 Cruise Dig. 421; 1 Green. Ev. sec. 266; Hampton vs. Spencer 2 Verm. 287 & 288.

2nd, Even if the defendants had insisted upon the statute of frauds as a defence, they would be held responsible as trustees; because the defendants having been permitted to take the place they held in the agreement, upon their own suggestion and for their own accommodation in lieu of the attorney for the judgment creditor, and of the complainants Montelius & Fuller, and upon their promise to perform the agreement made between English & Heard, and having bid off the land at the sheriff's sale, without being required to pay for it, and having thus got the title in their own name, immediately refused to execute a written declaration of the agreement, and proceeded to speculate upon the property for their own pecuniary benefit, will be regarded as trustees in equity on the ground of fraud. Roberts on Frauds, 102, 127, (no. 63;) Newel on Cont. 179; Story's Eq. secs. 330, 1265, 252, 256; 1 Cruise Dig. 429; Rose vs. Bates, 12 Mo. Rep. 30; Thyren vs. Thyren Verm. 296; Reech vs. Kennigate, 1 Ambl. 67; Brown vs. Lynch, 1 Paiges Ch. R. 147.

3d, Because the defendants, having admitted the agreement in full in their answer, and alleged in substance, that they have carried the agreement into effect, in good faith, and having admitted that they were trustees in fact, by executing their note for the benefit of Montelius and Fuller, for the balance of the $810, left after satisfying the execution of Westerfield against English; equity will see that they have executed the agreement in good faith as trustees. Smith et al. vs. Isaac, 12, Mo. Rep. 109.

2. Being responsible as trustees, they are not permitted to make any profit to themselves out of the trust property, but must account for all they received for the land. Story's Eq. secs. 321 to 323, 1211; 1 Madd. Chy. 91; New. on Con. 467; 2 Serg. on Vend. 124; 1 Cruise Dig. 499; 4th Kent's Com. 438 (5th edition;) Whichcate vs. Lawrence, 3 Ves. jr. 740; Mealor vs. Keemle, 2 Murphey's N. C. 272.

Judge BIRCH delivered the opinion of the court.

Westerfield having an execution against English, certain real estate belonging to the latter, was about to be offered for sale, at the April term of the Pettis circuit court, 1847. Heard, who was the attorney for Westerfield, having also in his hands for collection certain other demands against English, in favor of Montelius and Fuller, (also plaintiffs here,) entered into an arrangement with English, whereby he, (Heard,) was to purchase in the property at the sheriff's sale, for a sum simply covering the amount due upon Westerfield's execution, and that English or his friends might either redeem it, or that it should be publicly resold on the first Monday in August following, upon such terms as would best promote the interest of all the parties concerned, and that the proceeds of such sale should be applied, firstly, to the liquidation of the debt and costs due to Westerfield; secondly, to the payment of such sum as English might admit to be due to Montelius and Fuller; and thirdly, the balance, if any, to be paid over to English.

Westerfield being regarded as in doubtful circumstances, and the defendants being his creditors, they proposed to take the place of Heard in respect to the purchase, and subsequent disposition of the property, and it was assented to by English, "the understanding between all the parties being, that they would all use their exertions to get as good a price for the lands as possible, if it should become necessary to sell them in August." Accordingly, at the sheriff's sale in April, the defendants bid off the land in a lump, at the sum of seven hundred and seventy five dollars, theirs being the only bid made. They paid nothing to the sheriff or to Westerfield's attorney, upon their bid, although it exceeded the sum which Westerfield owed them, but nevertheless obtained the sheriff's deed for the lands. Soon after the sheriff's sale, in April, a written instrument, reciting the nature and terms of the agreement alluded to, was prepared and presented to the defendants, who, in their answer, attempt to excuse themselves for not signing it, by alleging that they never agreed to execute any *written* agreement of the kind. On the first Monday in August, the defendants, with the concurrence of English, resold the property at public auction, upon terms that eight hundred dollars of

23

the purchase money should be paid in hand, and the balance payable in twelve months, the purchaser paying interest at the rate of ten per cent per annum.   The defendants became the purchasers at the sum of eight hundred and ten dollars, but immediately sold it to one Brown, pursuant to a previous arrangement, for a thousand dollars, five hundred in hand, with the balance in 12 months with ten per cent interest.   The decree of the circuit Judge was for the excess, ($190,) and from that decree, the defendants have appealed to this court.

Brown testifies, that but for the arrangement which he previously made with the defendants, he would have endeavored to have provided himself with money enough to have been a competing bidder at the sale, and it is elsewhere testified, that previous to the first sale, he had offered English a thousand dollars for the land, which had been refused, and that this fact was also known to the defendants; and that while Brown and themselves were in treaty (so to speak,) for the ultimate purchase of the land from them at a thousand dollars, they sent him a message by his friend, suggesting that he should not bid for, or procure any other person to bid for the land, as they could purchase it cheaper than any one else. Eight hundred of the 810 dollars, for which they bid in the land, was exhausted by the execution of Westerfield, and they executed their note for the remaining ten dollars in favor of Montelius and Fuller, in accordance with the understanding already adverted to.

The question here is, whether that discharged them from the duties they had assumed, or whether, as decreed by the circuit Judge, they are liable for the whole sum for which the land was sold to Brown.   We cannot well perceive how the judge below could have decreed less than he did, being the mere *principal* of the excess which came to the hands of the defendants, out of the first property, over and above the sum they have paid over.   Taking the place of Heard, who was the *attorney*, and who had also specifically agreed to become the *trustee* of all the parties in interest, bearing the statute of frauds and perjuries, they could not stand below the grade of trustees of an express trust, and their conduct and their *answer* not only virtually admits that relation, but places the case beyond the mischief, and hence beyond the operation of the statute alluded to.   The answer and the testimony also disclose, that they *acted* upon, and were *availed* of the agreement, in every preliminary and particular, except in paying over the proceeds of the conditional and final sale now sued for.   Paying no money, yet obtaining a clear deed at the sale in April, is but corroborative of the whole tenor of the testimony, namely, that they were confided in as the trustees of the various parties

in interest, the plaintiffs and themselves inclusive. Persons thus entrusted, and thus assuming to act for the benefit of others, *cannot* act for *themselves*, so long as the ordinary signification attaches to ordinary words. Not only is the idea itself confused and irreconcileable, but if countenanced at all, neither chancellors nor juries could adjust a limitation to its pernicious, ramified and fraudulent effects. The rule should therefore remain as it is; holding agents or trustees to sincerity and *singleness* of purpose and of action—doing and performing for those who confide in them as though they were doing for themselves—and a court of equity, especially, would be derilect to the high duty which is imposed upon it, were it to either forego the patient labor or the moral firmness which is sometimes necessary, in order to unravel and overturn the various specious arrangements and devices, (direct and indirect,) which are either resorted to or acquiesced in, looking to an advantage merely *personal* in derogation of the strict and conscientious fidelity alluded to.

Decree affirmed with costs.